IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRESTON JOHNSTON | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No. |
| | : | |
| ALLEGHENY COUNTY SHERIFF'S | : | |
| Office, a division or agency of | : | JURY TRIAL DEMANDED |
| ALLEGHENY COUNTY, CARLOS | : | |
| JATIVA, MARK ZIMMERMAN, | : | |
| RICHARD MANNING, | : | |
| Individually and in their official capacities | : | |
| as Sheriff Deputies of Allegheny County | : | |
| | | |
| Defendants. | | |

# COMPLAINT

AND NOW, comes the Plaintiff, Preston Johnston, by his counsel, Aaron Sontz, Esq., and files the within Complaint, and in support thereof, avers as follows:

# JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 and the First and Fourth Amendments of the United States Constitution. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a)(3) and (4). Mr. Johnston further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 over the state law claims.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania and, at all relevant times, all parties were residents of Western Pennsylvania.

## PARTIES

3. Preston Johnston, the plaintiff, is an adult resident of the Commonwealth of Pennsylvania, residing in Allegheny County, Pennsylvania.

4. The Defendant, Allegheny County Sheriff's Office (ACSO), is a division or agency in and of Allegheny County and operated under and by virtue of the laws of the Allegheny County Home Rule Charter, the Commonwealth of Pennsylvania, and the laws, statutes, and regulations of the United States of America, with its principle office located at the Allegheny County Courthouse, Room 111, 436 Grant Street, Pittsburgh, PA 15219, and acted by and through its deputies, officers, agents, employees, staff acting within the scope of their respective employment.

5. The Defendant, Carlos Jativa, at all relevant times, is an individual employed as a deputy sheriff of the ACSO. At all relevant times, Mr. Jativa acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the ACSO. Deputy Jativa is sued in his individual capacity.

6. The Defendant, Mark Zimmerman, at all relevant times, is an individual employed as a sergeant of the ACSO. At all relevant times, Sergeant Zimmerman acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the ACSO. Sergeant Zimmerman is sued in his individual capacity.

7. The Defendant, Richard Manning, at all relevant times, is an individual employed as a Chief Deputy of the ACSO. At all relevant times, Chief Deputy Manning acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the ACSO. Chief Deputy Manning is sued in his individual capacity.

**FACTUAL ALLEGATIONS**

8. On May 25, 2023, Mr. Johnston was operating his business, a recording studio, out of 1219 Faulkner Street, Pittsburgh, PA 15204.

9. Allegheny County Sheriff Deputy Carlos Jativa was conducting an investigation to locate and apprehend a fugitive, Anthony Gibson.

10. Deputy Jativa allegedly received an anonymous tip that the fugitive was recording music at the 1200 block Faulkner Street. The anonymous tip did not mention Mr. Johnston.

11. Deputy Jativa had no information that Mr. Johnston was an associate of the fugitive.

12. Deputy Jativa had no information that Mr. Johnston and the fugitive knew each other.

13. Deputy Jativa, along with at least 14 other sheriff deputies including Sergeant Zimmerman, and a Lieutenant travelled to the 1200 block of Faulkner Street. Specifically, the sheriff deputies travelled to 1214 Faulkner Street. The sheriff deputies learned that the fugitive was not present at 1214 Faulkner Street.

14. Deputy Jativa averred that he heard loud music coming from 1219 Faulkner Street. Deputy Jativa also averred that he saw a vehicle parked in front of 1219 Faulkner Street that he recognized as one utilized by the fugitive and his known associate.

15. Several sheriff deputies created a perimeter around the residence. Other deputies provided front security. The final group of deputies, including Deputies Jativa, Letters, Heisel, Giegerich, Sergeant Zimmerman, and Lt. Nienhouser went to the front door.

16. Deputy Jativa knocked on the front door. Mr. Johnston answered the door. Deputy Jativa averred that when Mr. Johnston opened the door, he could see several people inside who he knew were acquaintances of the fugitive. Deputy Jativa estimated that there were eight or nine people inside.

17. Deputy Jativa then questioned Mr. Johnston about the fugitive.

18. Mr. Johnston denied knowing the fugitive. Deputy Jativa averred that he showed Mr. Johnston a photograph of the fugitive, and Mr. Johnston denied knowing him.

19. Deputy Jativa averred that he had no evidence that Mr. Johnston ever spoke to the fugitive or ever had any communication with him.

20. Deputy Jativa entered the threshold of the residence.

21. Deputy Jativa averred that Mr. Johnston permitted him to enter the threshold. However, Mr. Johnston denies that he provided consent for the deputies to enter the residence. Deputy Jativa agreed that Mr. Johnston demanded to see a search warrant.

22. Deputy Jativa responded that he had an arrest warrant, or body warrant, for the fugitive. The arrest warrant did not include a probable cause narrative. In other words, there was no judicial determination within the four-corners of the warrant that the sheriff deputies had probable cause to believe that the fugitive would be located at 1219 Faulkner Street on that day and time.

23. Mr. Johnston did not consent to a search of the residence.

24. Mr. Johnston asked to speak to the sheriff deputies' supervisor. Deputy Jativa told Mr. Johnston that the supervisor was already on scene, as well as the Lieutenant. Deputy Jativa averred that Mr. Johnston spoke with the supervisor.

25. Deputy Jativa averred that he heard a bang coming from an adjoining room in the residence. Though, in the affidavit of probable cause Deputy Jativa averred that he heard movement coming from the adjoining room. Deputy Jativa then searched the residence "for the safety of everyone involved."

26. At the time of the search of the residence, no person had been placed under arrest.

27. Once inside the residence, Deputy Jativa discovered the fugitive sitting on the couch. The Fugitive was not visible from the vantage point of the threshold.

28. Mr. Johnston and another guest in the residence attempted to use their cellular phones to record the interaction with the sheriff deputies. The deputies could be heard on the videos ordering everyone to put their phones down.

29. Mr. Johnston called 911 to document the interaction with the sheriff deputies.

30. Deputy Jativa arrested Mr. Johnston and charged him with one count of Hindering Apprehension, 18 Pa C.S. §5105, charged as a felony of the third degree.

31. On May 26, 2023, Mr. Johnston was arraigned, and his bail was set at $25,000. Mr. Johnston posted bail on May 26, 2023.

32. On August 15, 2023, Mr. Johnston appeared at Pittsburgh Municipal Court for his preliminary hearing. At the conclusion of the hearing, the charge was held for court.

33. Mr. Johnston waived his formal arraignment.

34. On November 16, 2023, Mr. Johnston filed an Omnibus Pretrial Motion—Motion to Suppress.

35. On March 19, 2024, Mr. Johnston appeared in the Court of Common Pleas, Allegheny County—criminal division, to litigate the motion to suppress. At that time the Commonwealth of Pennsylvania withdrew the charge.

## Count I

### Unlawful Search and Seizure Pursuant to 42 U.S.C. §1983
### In Violation of the Fourth Amendment
### (Mr. Johnston v. All Defendants)

36. All paragraphs herein are incorporated by reference.

37. As a direct result of the conduct described herein, the Defendants violated Mr. Johnston's right to be free from unreasonable, warrantless search and seizure under the Fourth Amendment of the United States Constitution.

38. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

   Wherefore, Mr. Johnston seeks judgement against the defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

## Count II

### Malicious Prosecution Pursuant to 42 U.S.C. §1983
### In Violation of the Fourth Amendment
### (Mr. Johnston v. All Defendants)

39. All paragraphs herein are incorporated by reference.

40. The Defendants initiated criminal proceedings against Mr. Johnston.

41. The criminal proceeding ended in Mr. Johnston's favor. Specifically, the charge was withdrawn.

42. The proceedings were initiated without probable cause insofar as Mr. Johnston did not commit any crime.

43. The Defendants acted maliciously or for a purpose other than bringing Mr. Johnston to justice.

44. Deputy Jativa falsified his official reports, offered perjured testimony, and falsified the Affidavit of Probable Cause, all of which was done with the intent to secure an unlawful conviction against Mr. Johnston.

45. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

### Count III

### False Imprisonment Pursuant to 42 U.S.C. §1983
### In Violation of the Fourth Amendment
### (Mr. Johnston against all Defendants)

46. All paragraphs herein are incorporated by refence.

47. Deputy Jativa arrested Mr. Johnston.

48. The detention was unlawful because it was not supported by probable cause.

49. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

### Count IV
### County Liability—Failure to Properly Train, Supervise, and Discipline
### Under 42 U.S.C. §1983 --Monell Claim
### (Mr. Johnston v. Allegheny County Sheriff's Office)

50. All paragraphs herein are incorporated by reference.

51. The Allegheny County Sheriff's Office failed to adequately train, supervise, or discipline the sheriff deputies, which amounted to a deliberate indifference on the part of Allegheny County.

52. Supervisors from the Allegheny County Sheriff's Office participated in and approved the violations of Mr. Johnston's constitutional rights.

53. The number of Sheriff deputies who travelled to the 1200 block of Faulkner Street based on nothing more than an alleged anonymous tip that the fugitive was somewhere on that block, without a search warrant supported by probable cause for a specific residence, creates an inference that the ACSO maintained a widespread custom, policy, or practice of violating citizens' rights during the search for fugitives.

54. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

### Count V

**Violation of Freedom of Speech Pursuant to
42 U.S.C. §1983 in violation of the First Amendment
(Mr. Johnston v. All Defendants)**

55.  All paragraphs herein are incorporated by reference.

56. Deputy Jativa and other sheriff deputies violated Mr. Johnston's right to freedom of speech when they ordered him to stop recording their illegal conduct on his cellular phone.

57. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

### Count VI

### State Cause of Action—Supplemental Jurisdiction
### Malicious Prosecution under Pennsylvania law
### (Mr. Johnston v. All Defendants)

58. All paragraphs herein are incorporated by refence.

59. The Defendants initiated criminal proceedings against Mr. Johnston.

60. The criminal proceeding ended in Mr. Johnston's favor. Specifically, the charge was withdrawn.

61. The proceedings were initiated without probable cause insofar as Mr. Johnston did not commit any crime.

62. The Defendants acted maliciously or for a purpose other than bringing Mr. Johnston to justice.

63. Deputy Jativa falsified his official reports, offered perjured testimony, and falsified the Affidavit of Probable Cause, all of which was done with the intent to secure an unlawful conviction against Mr. Johnston.

64. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

## Count VII

### State Cause of Action—Supplemental Jurisdiction
### False Imprisonment under Pennsylvania law
### (Mr. Johnston against all Defendants)

65. All paragraphs herein are incorporated by refence.

66. Deputy Jativa and other Defendants arrested Mr. Johnston.

67. The detention was unlawful because it was not supported by probable cause.

68. As a direct and proximate cause of the violation, Mr. Johnston suffered, and continues to suffer, loss of reputation, mental anguish, embarrassment, humiliation, degradation, and emotional pain and suffering in addition to serving a night in the Allegheny County Jail.

Wherefore, Mr. Johnston seeks judgement against the Defendants for compensatory damages, punitive damages, attorney fees, plus costs of this action, and other relief as the Court deems fair and appropriate under the circumstances.

**Prayer for Relief**

Wherefore, Mr. Johnston respectfully requests that judgment be entered in his favor and against all Defendants for

(a) Compensatory damages;

(b) Punitive damages;

(c) Attorney's fees, witness fees, and costs; and

(d) All other relief as this court deems just and proper.

Respectfully submitted,

/s/Aaron Sontz
Aaron Sontz, Esq.
Aaron Sontz Legal Services, P.C.
220 Grant Street, Fifth Floor
Pittsburgh, PA 15219
412-819-8798
Office@AaronSontzLaw.com
www.AaronSontzLaw.com
PA ID# 203215